UNITED STATES of America, Appellee,

v.

Angelo MORET, a/k/a Harry, and Augustine Moret, Defendants-Appellants.

No. 324, Docket 28108.

United States Court of Appeals Second Circuit.

Argued March 6, 1964.

Decided June 30, 1964.

Irving Katcher, New York City, for defendant-appellant Angelo Moret.

Morris M. Goldknopf, New York City, for defendant-appellant Augustine Moret.

John F. X. Peloso, Asst. U. S. Atty., S.D.N.Y., New York City, (Robert M. Morgenthau, U. S. Atty., and James M. Brachman, Asst. U. S. Atty., New York City, on the brief), for appellee.

Before WATERMAN and KAUFMAN, Circuit Judges, and DIMOCK, District Judge.*

DIMOCK, District Judge.

Angelo Moret and his wife Augustine appeal from judgments of conviction entered on February 8, 1963 in the United States District Court for the Southern District of New York after a five day trial before Judge Edmund L. Palmieri and a jury. The indictment charged that appellants received, concealed, sold and facilitated the transportation, concealment and sale of illegally imported heroin, in violation of Title 21 of the United States Code, Sections 173–174. Both appellants were found guilty and each was sentenced to the mandatory minimum of five years in prison.

The evidence against appellant Angelo Moret was overwhelming. He was identified by the buying agent as the man who sold him for $325 white powder which was represented and later proved to be heroin. Points urged with respect to alleged inconsistencies in the testimony or reports of the narcotics agents and with respect to the fact that the Government did not call the informer are without merit.

The evidence with respect to Augustine Moret presents a different picture.

The purchase was made on the second floor of 68 East 112th Street in the Borough of Manhattan, City of New York. That is on the south side of 112th Street four doors west of Park Avenue. Two narcotics agents had the entrance under surveillance from an automobile parked on the west side of Park Avenue just north of its intersection with 112th Street. The lot on the northwest corner of Park Avenue and 112th Street was vacant and surrounded by a wire fence. The agents with the aid of binoculars were looking at the entrance to number 68 through the windshield of the car and the wire fence. There was testimony that the entrance was from 60 to 70 feet away. Their testimony is summarized in the following paragraph.

The Morets drove up in a white Chrysler car from the west and passed the doorway of number 68 and stopped. They got out, Augustine from the right and Angelo from the left. She walked toward the entrance of number 68 and he followed about a foot behind and to her left. She got up on the step of number 68, stopped a moment and took something from the front of her person with her left hand. The backs of both Morets were turned to the agents so that they could see nothing in front of Augustine. She then handed something with her left hand to Angelo and he put it in his right trouser pocket. This was consistently described as a flat white package. One agent estimated its size as $3\frac{1}{2} \times 3\frac{1}{2}$ inches and the other 4 by 4 inches. When one of the agents was asked "Could you tell whether the package was translucent, transparent, or

* Sitting by designation.

opaque" he replied "No; all I could tell was it was white in appearance."

There was testimony by a third agent that he made the purchase inside of number 68 immediately after the entrance of Angelo and Augustine and that Angelo took from a trouser pocket, which the witness said he believed to have been the right one, a double glassine envelope, which the witness said he believed to have been one inch by one inch and could have been held in the palm of the hand. This, the witness said, contained a white powder. On weighing and analysis this proved to be a little more than half an ounce of heroin.

The court charged the jury that the evidence as to Augustine stopped when she got inside the building and that she must be found guilty or innocent on the basis of their findings with respect to what happened in front of the building.

The case against her thus rested on the identity of the something that she was said to have given Angelo and the something which Angelo extracted from his trouser pocket.

Augustine took the stand and denied the whole story.

Her counsel moved for judgment of acquittal at the end of all the evidence and the motion was denied.

While the evidence of identity was weak, it was strong enough to support the verdict. A double glassine envelope an inch square containing a half ounce of heroin would not much resemble a white package 3½ or 4 inches square when seen through binoculars at 60 feet. Nevertheless, to support the verdict, we are not forced to conclude that the package and the envelope were the same. Consistently with the testimony, the envelope may have been delivered by Augustine to Angelo with the package or inside of the package and may have been put by Angelo in his righthand trouser pocket and then by him taken from that pocket. The jury might have found that the male defendant with a single motion took the glassine envelope from the white package and from his trouser pocket.

The court's charge did not restrict the jury to the theory that the white package and the glassine envelope were identical. Indeed, at no point did it submit that question to them.

On the subject of the testimony of the receipt of the white package and the delivery of a glassine envelope, the court said:

"The term 'inference' becomes an extremely important issue in this case, particularly with respect to the defendant Augustine Moret. During a recess I had the stenographer read me a part of the opening address that was made to you in this case by Mr. Gold. Mr. Gold said in his opening that the government's evidence would show as to Augustine Moret that she removed from her bosom a glassine envelope. Now, the proof was not that, and it would have been more accurate for Mr. Gold to have said the proof will show that Augustine Moret removed from some place on the front and upper part of her person a white package which I believe you will be justified in inferring was a glassine envelope. You see the difference between evidence of something and a request that you infer something from something that was proved.

"In this case the evidence of the agents who observed Augustine Moret in the vicinity of the entrance to 68 East 112th Street—and I will have more to say about that in a moment—was that they saw a small white, flat package. It was somewhat differently described by each agent, and there was no evidence by them, no direct evidence, that what they saw was a glassine envelope. But the government in closing, Mr. Gold in summing up his case, asked you in effect to find that what Augustine Moret did on that day was that she handed over a glassine envelope containing narcotic drugs and knowing that it did contain narcotic drugs and for the

purpose of assisting her husband to take that into the building."

Though the court in a supplemental charge said, "[I]f you believe that a small white package was taken out of the right trouser pocket and that that package which was taken out was the package that she gave her husband, according to the government's evidence you would be justified in making those inferences," the reference to the item taken out of the pocket as "a small white package" could not have been understood to limit the jury to a finding that the item produced by Angelo was the flat white package delivered to him by Augustine. That portion of the supplemental charge was preceded by three references to the purchaser's testimony that what was taken out of the right trouser pocket was a glassine envelope.

After the jurors had deliberated for about two hours they sent out the following note: "In reference to Mrs Moret, on what basis is the jury to decide her guilt or innocence? Does she have to have knowledge that she was carrying narcotics?" The judge, in answer, instructed the jury on the law and then, after saying "The government's evidence in this case against Augustine Moret is in substance as follows," summarized the government's testimony. He closed by saying that he thought that he had reviewed all of the evidence that could be said to pertain to guilt or innocence. He had not, however, referred to the fact that Augustine had taken the stand and made a categorical denial of being present on any occasion such as was the subject of the testimony. After the jury had retired, counsel excepted to the supplemental charge on the ground that the judge should have reread the original charge instead of giving additional instructions.

After the verdict counsel for Augustine moved to set it aside on the ground, as stated, "that your Honor stressed only the testimony upon that application of the government and paid no reference or made no reference to testimony of the female defendant with relation to the testimony which your Honor spoke of pertaining to the government agents."

The motion was denied. The denial was proper since there had been no exception to the supplemental charge on the ground assigned in the motion. Rule 51, F.R.Crim.P.

A contention that the trial judge should not have admitted two certain pairs of binoculars in evidence is without substance. According to the testimony two pairs were used. One was from the pool maintained by the local office of the Bureau of Narcotics. The other was the property of one of the agents. There was testimony as to one of the pairs that were admitted that all of the binoculars in the pool were of the same type and power. As to the other pair that was admitted the testimony was that the pair belonging to the agent had been lost but that the pair admitted was identical with it. The jury called for the binoculars during their deliberations. The court had carefully instructed the jury that the binoculars were not the ones which had been used and that they were not offered to show that they were in the same condition as the ones that were used "because obviously there is no testimony that would support the claim that they are in exactly the same condition." He added, "It is solely as to general size, structure, shape and capacity."

We reject counsel's argument that, in a criminal case such as this, binoculars which are sworn to be of the same capacity as those used are not admissible as demonstrative evidence unless sworn also to be in the same condition.

The convictions are affirmed.

KAUFMAN, Circuit Judge (concurring).

While I join in the affirmance of both convictions, my reasons for so doing in Augustine's case differ markedly from those advanced in the opinion of Judge Dimock. Simply stated, I believe that the jury might properly have concluded that the "package" which Augustine

was seen to pass to Angelo outside of the building was identical to the "envelope" of narcotics which Angelo sold inside, and I would, therefore, affirm Augustine's conviction. In light of the evidence, the instructions of the Court, and the arguments of counsel, however, I do not believe that the jury could have convicted Augustine on the theory propounded for the first time in my brother Dimock's opinion on this appeal—that the "envelope" sold by Angelo might have been extracted from the "package" passed by Augustine.

After examining the record, I find no evidence whatsoever that more than one "envelope" or "package" existed, or that the former may have been taken from the latter. Indeed, the government's entire case against Augustine was premised on the notion that the "package" and the "envelope" were identical; accordingly, considerable emphasis was placed on testimony indicating that the container of narcotics was placed into, and taken out of the same pocket—Angelo's right-hand trouser pocket. More significantly, the Court's instructions repeatedly suggested that Augustine's guilt turned on whether the "package" and the "envelope" were found to be one and the same. Thus, in the very passage from the charge cited in Judge Dimock's opinion, Judge Palmieri stated that the government had not *directly proved* that Augustine had passed a "glassine envelope," but that the jury might properly *infer* this to be true; in context, this can only be taken as referring to *the* "glassine envelope" which Angelo sold to the federal agent. And if there might have been any doubt as to the Court's meaning at this time, it was promptly clarified by the portion of the supplemental charge which also appears in Judge Dimock's opinion. Thus, the jury was there informed that it might convict Augustine "if you believe that a small white package was taken out of [Angelo's] right trouser pocket *and that that package which was taken out was the package that she gave her husband.*"

I thus find no warrant for sustaining the verdict on a wholly conjectural theory which seems so basically at variance with the evidence, arguments, and instructions at the trial. But my unwillingness to accept this sort of speculation —advanced by neither party, here or below—does not compel me to join my brother Waterman in voting for reversal. For, as I have indicated, I believe that we may not properly disturb the jury's conclusion as to the one issue which *was* presented for its consideration and which provides the only support for Augustine's conviction—the question whether the "package" passed was, in fact, the "envelope" sold.

This particular question, indeed, heatedly debated by counsel and properly spotlighted by the Court as it was, seems to me precisely the sort of issue of fact which juries are intended to determine. It is axiomatic, and rightfully so, that appellate courts may not replace the jury's view of the evidence with their own. See United States v. Dardi, 330 F.2d 316 (2d Cir. 1964); United States v. Tutino, 269 F.2d 488 (2d Cir. 1959). In the present case, the jury, unlike this Court, heard all of the testimony and saw all of the exhibits—including that much-discussed envelope; it was also correctly instructed as to the applicable law. Under these circumstances, I see no justification in rejecting the jury's conclusion.

I might add that the approximations of size proffered as to both the "package" and the "envelope" were but rough guesses, and, with respect to the "package," recollections of an event long in the past. Further, the agents who observed Augustine pass the "package" to her husband were stationed at a substantial distance from the transaction, and were viewing the scene through the magnification of binoculars; it would, therefore, not be surprising if their computations were somewhat less than precise, especially since there was testimony that they observed only a portion of the "package" being passed. Finally, when she took

the stand, Augustine denied even being present at the time the alleged transaction took place; it seems clear that this denial, disproved by the testimony of three government agents, might quite properly have been considered by the jury as evidencing consciousness of guilt.

Looking at the evidence in the light most favorable to the government—which we must at this juncture of the case—and recognizing that possession of narcotics may be proved by circumstantial evidence, United States v. Gregory, 309 F.2d 356 (2d Cir. 1962), I am unwilling to say that a reasonable jury could not have found from the evidence that the "package" which Augustine passed was the "envelope" of narcotics which Angelo sold. We should avoid arrogating to ourselves the role of super-jurors, and attempt to refine facts on issues fully tried out before a jury; we usurp the function of the jury itself when we meddle in this area. If we were to reverse Augustine's conviction in the present case, our decision would be tantamount to a holding that, as a matter of law, the government had not made out a case sufficient even to go to a jury. And if such a ruling were warranted here, it would seem to follow that unless the testimony of all government witnesses in criminal cases precisely dovetails and is perfectly consistent, the lower court commits reversible error by submitting such a case to a jury. I know of no law or precedent for this curious doctrine.[1]

Nor can I accept the proposition, implicit throughout my brother Waterman's dissenting opinion, that the mandatory minimum five-year sentence imposed upon Augustine by the narcotics statutes in any way increases our power to readjudicate the facts already determined by the jury. In Mr. Justice

Frankfurter's words for the Supreme Court in Bollenbach v. United States, 326 U.S. 607, 614, 66 S.Ct. 402, 406, 90 L.Ed. 350 (1946), "it may not be amiss to remind that the question is not whether guilt may be spelt out of a record, but whether guilt has been found by a jury according to the procedure and standards appropriate for criminal trials in the federal courts." That the penalty imposed by the legislature may be severe hardly alters the nature of our task in this regard, nor may it transform the question before us.

Finally, I cannot accept Judge Waterman's suggestion that Augustine's conviction must be reversed because Judge Dimock and I would affirm on different legal theories. If such a principle were law, numerous affirmances or reversals, in the Supreme Court and other appellate courts, should properly be vacated. See, e. g., Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); Braunfeld v. Brown, 366 U.S. 599, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961); James v. United States, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961); National Mutual Ins. Co. v. Tidewater Transfer Co., 337 U.S. 582, 69 S.Ct. 1173, 93 L.Ed. 1556 (1949); Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945); Prudential Ins. Co. v. Gray Manufacturing Co., 328 F.2d 438 (2d Cir. 1964). Cf. Helvering v. Gowran, 302 U.S. 238, 245, 58 S.Ct. 154, 82 L.Ed. 224 (1937); Lum Wan v. Esperdy, 321 F.2d 123, 125–26 (2d Cir. 1963). Whatever our differences, Judge Dimock and I agree upon the crucial question outlined by Mr. Justice Frankfurter—that "guilt has been found by a jury according to the procedure and standards appropriate for criminal trials in the federal courts." Since we agree that the jury's verdict should stand, it would seem immaterial

---

1. In view of the inevitable fallibility of human perception, I, for one, would be somewhat suspicious of testimony that was *perfectly* consistent; such a remarkable degree of coincidence would seem to smack more of coaching and rehearsal than of accuracy and truth. In the pres-

ent case, indeed, the slight discrepancies in the testimony of the various agents may well have contributed to the jury's conclusion that it was being told the truth, rather than an artfully contrived story.

that we reached our common destination by different routes.

I would affirm for the reasons stated in this opinion.

WATERMAN, Circuit Judge (dissenting).

I concur with the majority in affirming the conviction of Angelo Moret, but I respectfully dissent from the affirmance of that of Augustine Moret. I am of the belief that the latter defendant's motion for a directed verdict of acquittal, first made at the close of the government's case, repeated after both sides had rested, and made once again after the jury had returned its verdict, should have been granted. The only evidence introduced by the government in support of the government's case against her was not merely weak—it was so completely self-contradictory that it afforded insufficient basis for permitting the issue of her guilt to go to the jury.

As the government approached this trial, and as it recognized in its opening statement and in its profferings of evidence, in order for it to make out a proper case against Augustine it was essential to show that she, as well as her husband, had been in actual physical possession of the half ounce of heroin Angelo sold to the narcotics agent. The government recognized that eye witness testimony of association with her husband when accompanying him to the scene could not suffice for conviction. The government attempted to establish this essential fact of actual possession through the testimony of three of its agents, one of whom purchased the half ounce of heroin from Augustine's husband, Angelo, inside a building, and two of whom observed the actions of Augustine and her husband immediately prior to the entry of both defendants into that building. These latter two agents, observing appellants with binoculars at a distance of 60 to 70 feet through a wire mesh fence, testified they saw Augustine get out of a car with Angelo and pass something to him before the two entered the building. The government argued that the heroin sold inside the building was the something that had changed hands outside. The difficulty with this claim, however, is that the details of the inside agent's testimony, when compared with those of the outside agents' testimony, point to a conclusion I believe inescapable, that, if anything at all changed hands outside the building, it was something different from that which was sold inside.

The agent who testified to purchasing the heroin from Angelo Moret stated that the heroin, which Angelo extracted from his right trouser pocket before handing it to him, was contained in a one-inch square double glassine envelope; and the agent identified at trial and put into evidence the very envelope which he said he had received. This envelope differed markedly from the object which the other two agents claimed they saw Angelo take from his wife outside the building and place in his right trouser pocket. Both these latter agents, observing defendants at a distance and through a wire mesh fence with binoculars, described the object which they saw change hands as having been much larger. One described it as a white flat package four inches by four inches; the other described it as a white flat package three and one half inches by three and one half inches. In fact, the latter agent indicated that the package had to have been that big for him to have seen it at all, for he stated that when Augustine transferred the package she did so with her palm turned away from him, and he was only able to see the edges of the package sticking out over her hand. Stating the size of the various packages in terms of total area, the glassine envelope which contained heroin and which was transferred inside the building was but one inch square, while the package which the agents saw being transferred outside the building was described as being either $12\frac{1}{4}$ square inches or 16 square inches large.

The government never attempted to resolve this contradiction in the evidence against Augustine, except by arguing

that because the envelope of heroin was taken from the same trouser pocket into which Angelo had been seen placing the package given him by his wife outside, it must have been the same package. But in order to accept this conclusion, the testimony of the two agents outside must be entirely discredited on the issue of what they saw being transferred, and it must be assumed that what they really saw being transferred, despite their testimony, was not of the size of 12¼ or 16 square inches, but was only one inch square.[1]

I cannot agree with my brother Kaufman that, despite this gross conflict in the only evidence which the government introduced against Augustine, we should affirm her conviction and not set aside her five-year sentence of incarceration upon the theory that the jury was merely confronted with a slight variance in evidence such as frequently occurs in trials and which it was the proper province of the jury to resolve. This case does not present the familiar situation that creates a two-sided credibility issue for the jury to resolve when a key government witness and a key defense witness give different versions of the same event. Nor does it involve the submission to the trier of fact of several possible inferences as to a defendant's state of mind which a jury might reasonably draw from certain established outwardly observable facts, compare, e. g., United States v. Dardi, 330 F.2d 316 (2 Cir. 1964), or several possible reasonable interpretations thereof, one inference consistent with innocent conduct, compare, e. g., United States v. Tutino, 269 F.2d 488 (2 Cir. 1959). We are concerned here only with whether the government's evidence adequately established that one particular event, Augustine Moret's possession of a one-inch square package containing

heroin, actually took place. This case also does not involve, in my judgment, the presentation by the government of evidence which, because of slight variations, merely fails to "precisely dovetail." It would be a sorry day indeed if government testimony in a criminal case always had to be "letter perfect" by rote if convictions were to be obtained. Here, however, two segments of testimonial evidence, the testimony of the agents outside the building and that of the agent inside the building, both of which were absolutely essential to support the conviction of Augustine, constituted the only evidence presented by the government in support of its case against her, and those two segments of testimonial evidence contradicted each other.

This in itself, in my judgment, requires that we reverse this conviction.

In addition, the nature of this conflict of crucial evidence invites a look at certain other disturbing questions about the government's case against Augustine. Could the agents, through binoculars, even under the best of conditions, have seen a one-inch square envelope changing hands at the relevant distance? If, as one of the agents testified, Augustine's palm was turned away from both agents as she made the transfer, how did either of the agents see the one-inch square envelope being passed? At least, how could the one agent who testified he saw only the edges of a white flat package sticking out over Augustine's palm, turned away from him, possibly have seen sticking out over her palm the edges of a glassine envelope one inch by one inch? If the agents made an error of this magnitude in observing the size of the package passed, mistaking something about the size of a postage stamp for something almost half the size of an ordinary business envelope, how certain can we be that they actually saw *anything*

1. Of course it would be theoretically possible to credit the testimony of the binocular-equipped agents and to reject the testimony of the agent who purchased the one-inch square glassine envelope which contained the heroin; but as that envelope was introduced into evidence and the agent described it on the record as being of that size, such a choice of stories would be an unrealistic choice, indeed.

change hands? These are not idle questions. They bear directly on the only issue involving Augustine—that of whether the government produced *any* credible evidence tending to show that she ever had physical possession of the heroin her husband subsequently sold so as to require that the question of her guilt be submitted to a jury.

I am also unable to accept my brother Dimock's reasoning that the jury could have found that, sometime between the time the defendants entered the building and the time Angelo met the agent to whom the sale was made, Angelo Moret either transferred heroin from a larger package given him by his wife to the small glassine envelope which contained the heroin when it was sold, or took the small glassine envelope out of a larger package. There are several reasons why I feel compelled to reject this explanation as a basis for sustaining Augustine Moret's conviction. First, the government consistently attempted to establish the identity of the package by showing that when the sale was made Angelo withdrew the glassine envelope from the same pocket into which he had placed the package he had taken from his wife. This argument rests on the assumption that what was in Angelo's pocket before he entered the building stayed there until his sale to the narcotics agent inside. Any attempt to resolve the conflicting testimony as to the size of the packages observed by implying some switch of packages after Angelo entered the building destroys this underlying assumption. In order to affirm on such a theory, we must assume not only that what Angelo put in his pocket outside stayed there until his meeting with the agent inside, but also that sometime between the time he entered the building and met the agent, while unseen by anyone except possibly his wife, he made a switch of packages and then put the new package back into his same trouser pocket. Such hypothetical conjecture is, in my judgment, insufficient to support Augustine's conviction. Moreover, if an assumption be made that Angelo received from Augustine a large package with the small glassine envelope of heroin inside, and that once inside the building he was able to maneuver with his hand within the recesses of his trouser pocket, so as to pluck the glassine envelope from inside the large package and thus produce only the small glassine envelope for sale, such an effort to resolve the conflict in testimony is equally open to criticism as similarly being but hypothetical conjecture. Second, the government never suggested to the jury, or to this court, that such a switch had been made, or that more than one package, or any package within a package, was involved, but argued to it and to us that the mere fact that Angelo's hand went into and came out of the same pocket established that what Angelo sold to the agent was what he had received from his wife. Lastly, even assuming that a charge to the jury which indicated that the agents' contradictory stories could be reconciled by adopting either of the two theories just discussed, and thereby the conviction would be justified, I agree with Judge Kaufman that the charge did no more than indicate to the members of the jury that they could infer that the package sold inside the building was the same one which the agents outside had seen change hands.

Finally, I point out that all three of us have indicated that, in the face of the government's conflicting evidence as to the identity of the package of heroin which she is supposed to have had in her possession, there are only two possible ways of justifying an affirmance of Augustine Moret's conviction: (1) by regarding the evidence as sufficient for the jury to conclude that the package transferred by Augustine outside the building was the very one which contained the heroin which her husband sold to the government agent inside; or (2) by regarding the evidence as sufficient for a jury to conclude that more than one package was involved, at least one of which was in Augustine's possession outside the building and when in her possession contained heroin. My brother Dim-

ock notes in his opinion that the package of heroin sold inside the building would not much resemble the one described as having changed hands outside, but says that to support the verdict it is unnecessary to conclude that the two packages were the same, thus tacitly rejecting alternative (1) above. My brother Kaufman, in his concurring opinion, explicitly rejects alternative (2) in favor of a ruling that the jury could reasonably have found the envelopes to have been the same. I, of course, reject both alternatives (1) and (2). Therefore, although separate majorities of this panel agree in rejecting each of the only two possible methods of reconciling the government's contradictory evidence which would permit affirmance of Augustine Moret's conviction, she must serve the prison sentence imposed upon her unless she is able to obtain a different result in a higher court than ours.

I would reverse Augustine Moret's conviction.