Larry LUSK et al., Appellants,

v.

EASTERN PRODUCTS CORPORATION, and Local Union No. 75, United Furniture Workers of America, AFL–CIO, Appellees.

No. 13629.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 6, 1970.

Decided June 9, 1970.

Joseph F. Lentz, Jr., Baltimore, Md. (Donald McIntosh, Baltimore, Md., on brief) for appellants.

Bernard W. Rubenstein, Baltimore, Md. (Edelman, Levin, Levy & Rubenstein, Baltimore, Md., on brief), for appellee Local Union No. 75, United Furniture Workers of America, AFL–CIO.

John F. McClure, Chicago, Ill. (Arnstein, Gluck, Weitzenfeld & Minow, Chicago, Ill., Jacob Blum, Baltimore, Md., Charles Yumkas, and Blum, Yumkas & Mailman, Baltimore, Md., on brief), for appellee Eastern Products Corp.

Before BOREMAN, WINTER and CRAVEN, Circuit Judges.

BOREMAN, Circuit Judge:

The appellants (plaintiffs) are from a minority group of dissatisfied members of Local Union No. 75, United Furniture Workers of America, AFL–CIO (the Union), who appeal from an order of the district court granting motions of the defendants, Eastern Products Corporation (the Company), and the Union, to dismiss plaintiffs' complaint.

For some time prior to April 6, 1962, a collective bargaining agreement between the Union and the Company, plaintiffs' employer, provided, in part, that those employees working the second shift (4:00 p. m. to midnight) would be paid an additional ten percent of their regular hourly wage rate, and those employees working the third shift (midnight to 8:00 a. m.) would receive an additional fifteen percent of their regular hourly wage rate, as shift differentials.

In collective bargaining negotiations in 1962 Union negotiators, allegedly in exchange for the agreement of the Company to initiate a pension plan for employees, agreed, in effect, that the shift differentials for those employees on the payroll as of April 6, 1962, would be frozen.[1] Some employees complained of the freezing but the Union consistently maintained that the agreement with respect to shift differentials was the result of collective bargaining and that the Union was required to make concessions on this issue in order to procure the desired pension plan. This same provision with respect to shift differentials was incorporated into two subsequent contracts negotiated between the Union and the Company.

In October 1967 the Union received additional complaints concerning the shift differentials. A grievance on behalf of the plaintiffs was presented to the Company by the Union but nine days later the plaintiffs filed their complaint in the instant action in the district court, under § 301 of the Labor Management Relations Act, as amended, 29 U. S.C. § 185.[2] The court, after hearing

---

1. Article XII—Shift Differentials

"Effective April 6, 1962 the Employer agrees to pay as Shift Differential a minimum of fifteen (15¢) cents for the second shift and a minimum of twenty-five (25¢) cents for the third shift over and above the Employee's regular hourly rate of pay provided however all employees now receiving in excess of such amounts will not be reduced and *any Employee on the payroll as of April 6, 1962 who may be transferred to another shift paying a Shift Differential higher than that previously received by said Employee shall continue to receive ten (10%) per cent for the second shift and fifteen (15%) per cent for the third shift or fifteen (15¢) cents for the* *second shift and twenty-five (25¢) cents for the third shift, whichever is greater. Such amounts received shall not exceed the highest amount being paid to an Employee in the Classification where the change is being affected.*" (Emphasis supplied.)

2. 29 U.S.C. § 185

(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy

defense motions to dismiss the complaint or stay the proceedings, on May 17, 1968, ordered that the proceedings be stayed pending final determination of arbitration.

The grievance was processed through the first three steps of established contract grievance procedure. Unable to reach agreement, an impartial arbitrator then was selected and on May 21, 1968, a scheduled hearing was held before the arbitrator. Plaintiffs were invited to attend the hearing, to participate, and to be represented by their own counsel. Mr. McIntosh, plaintiffs' counsel, appeared at the hearing and stated:

> "My role here is to state the position of the employees against the Union and the Company. It is not to actually enter into the grievance process, but merely to make a statement of our position."

Counsel for the Union and the Company stated that they had no objection to full participation in the arbitration proceeding by Mr. McIntosh for such purposes and to such extent as he might see fit. Mr. McIntosh cross-examined witnesses, called other witnesses, and was given, at his request, thirty days to further prepare his case and to either call additional witnesses or to make any further desired presentation. Finally, he chose to file a lengthy brief on behalf of his clients.

On September 9, 1968, the arbitrator submitted an opinion in which he determined that the grievance was without merit, holding that the company had complied with the shift differential provision of the labor contract.

In their complaint, plaintiffs stated in conclusory terms that the Union and the Company had:

> "* * * illegally combined for the purpose of depriving the Plaintiffs and their fellow employees of the full benefits of the said Agreement. That such combination Agreement was made and still continues in effect, arbitrarily, illegally, fraudulently and with reckless disregard for and of the rights of the Plaintiffs to receive their proper wages."

The only specific action or nonaction by the Union to which plaintiffs refer in their complaint is found in the allegation that the Union "refused and continues to refuse" to present a grievance for them to the Company. The issue of improper representation of plaintiffs by the Union was raised before the arbitrator and disposed of by him as follows:

> "It is possible that some of the minority group did not grasp the nature of this bargain when it was presented to the Union for ratification. Absent any showing that they were deceived by their own representatives, this is no reason for construing the language to mean anything other than what it says so clearly. There is no evidence before me of deceit or improper representation by Union representatives. To the contrary, all indications are that they reported as accurately and as factually as possible just what the bargain was that the Union was being asked to ratify. Subsequently, consistently and steadfastly, candidly and forthrightly, they adhered to the bargain despite the fact that, from time to time, members of the minority group raised questions. It is noted that although questions were raised, no grievances were filed and that the identical provisions were incorporated into two subsequent agreements without formal protest of the administrative procedures and payments made by the Company."

Following the conclusion of the arbitration proceeding, the district court granted the separate motions of the Union and the Company to dismiss plain-

or without regard to the citizenship of the parties.

(b) Any labor organization which represents employees in an industry affecting commerce as defined in this chapter and any employer whose activities affect commerce as defined in this chapter shall be bound by the acts of its agents. Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States. * * *.

tiffs' complaint. On appeal, plaintiffs contend that the court erred in requiring them to submit to arbitration, in holding that they had in fact submitted to arbitration, and in granting the motions to dismiss.

■ It is established that federal courts have jurisdiction under § 301 of the Labor Management Relations Act where a member of a union charges that his union breached its duty to fairly represent him by colluding with the company to deprive him of his rights. Vaca v. Sipes, 386 U.S. 171, 177, 87 S. Ct. 903, 17 L.Ed.2d 842 (1967); Humphrey v. Moore, 375 U.S. 335, 342–344, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964); Chasis v. Progress Manufacturing Co., 382 F.2d 773, 775 (3 Cir. 1967); Bieski v. Eastern Automobile Forwarding Co., 231 F.Supp. 710, 715 (D.Del.1964).

■■ However, the allegations of a complaint alleging a breach of a union's duty of fair representation must contain more than conclusory statements alleging improper representation; conclusory allegations without specifying supporting facts to show the union's lack of good faith fail to state a valid claim. Balowski v. International U., United A., A. & A. Imp. Wkrs., 372 F.2d 829, 835 (6 Cir. 1967); Hardcastle v. Western Greyhound Lines, 303 F.2d 182, 186 (9 Cir. 1962), cert. denied, 371 U.S. 920, 83 S.Ct. 288, 9 L.Ed.2d 229; Brown v. Truck Drivers & Help. Loc. U. No. 395, Baltimore, Md., 264 F.Supp. 776 (D.Md. 1967). Here, plaintiffs complained of an illegal combination between Union and Company in language which was purely conclusory, with no specific factual allegations to support the charges. Since such allegations are insufficient to state a claim of improper representation by the Union or collusion between Union and Company, the lower court could have properly dismissed plaintiffs' complaint for failure to state a claim.

However, the dismissal was not grounded upon plaintiffs' failure to state a claim, but on the theory that plaintiffs were required to submit the subject of their complaint to arbitration, that all questions raised in plaintiffs' complaint had been resolved adversely to plaintiffs by the arbitrator and that the arbitrator's holdings were binding upon the court and upon plaintiffs. In this holding, the lower court was in error.

■ Where an employee member of a union bases his case upon a conspiracy or an illegal combination between his union and his employer to deprive him of his rights he cannot be forced to submit that issue to arbitration between the employer and the union since such procedure would entrust representation of the complaining employee to the very union which he claims refused him fair representation and because it would present as adversaries in the arbitration proceeding the two parties charged by the employee with combining to defraud him. Desrosiers v. American Cyanamid Co., 377 F.2d 864 (2 Cir. 1967); Hiller v. Liquor Salesmen's Union Local No. 2, 338 F.2d 778 (2 Cir. 1964); see, Vaca v. Sipes, 386 U.S. 171, 186, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), *supra.*

■ Had plaintiffs' complaint sufficiently stated a claim, the lower court's holding that plaintiffs were bound by the arbitrator's decision could well have required reversal. However, it is a well-established principle that a lower court's decision will not be reversed when that decision is correct, even though the court assigned an incorrect reason for its decision. Riley Inv. Co. v. Commissioner of Internal Revenue, 311 U.S. 55, 59, 61 S.Ct. 95, 85 L.Ed. 36 (1940); United States Gypsum Co. v. Greif Bros. Cooperage Corp., 389 F.2d 252, 262 (8 Cir. 1968); United States v. Rose, 346 F.2d 985, 989 (3 Cir. 1965); United States v. Moret, 334 F.2d 887, 892 (2 Cir. 1964); Lum Wan v. Esperdy, 321 F.2d 123, 125–126 (2 Cir. 1963); Willett v. C. I. R., 277 F.2d 586, 589 (6 Cir. 1960), cert. denied, 364 U.S. 914, 81 S.Ct. 276, 5 L.Ed.2d 226. Since the lower court could have properly dismissed plaintiffs' complaint for failure to state a claim the dismissal below will be

Affirmed.