492 F.2d 399
 7 Fair Empl.Prac.Cas. 827, 7 Empl. Prac. Dec. P 9365
Charlene WILLIAMS, Individually and on behalf of all other
similarly situated female employees of General
Foods Corp., Plaintiffs-Appellants,
v.
GENERAL FOODS CORP. et al., Defendants-Appellees.
 Nos. 73-1075, 73-1485.
 United States Court of Appeals, Seventh Circuit.
 Argued Nov. 29, 1973.
Decided Feb. 28, 1974.
 
 Edward A. Berman, Bernard B. Brody, Chicago, Ill., for plaintiffs-appellants.
 Francis F. Sulley, Arthur B. Smith, Jr., Irving M. Friedman, Chicago, Ill., for defendants-appellees.
 Before CLARK, Associate Justice,* CASTLE, Senior Circuit Judge, and GRANT,*0 Senior District Judge.
 CASTLE, Senior Circuit Judge.
 
 
 1
 Plaintiff Charlene Williams[1] appeals from orders granting summary judgment to defendant General Foods Corporation ('the Corporation') and dismissing the complaint against defendants American Federation of Grain Millers Local No. 70 and American Federation of Grain Millers International AFL-CIO ('the Unions') in a class action[2] alleging sex discrimination in employment practices by the Corporation and the Unions and claiming denial of fair representation by the Unions. On Appeal, Williams asserts that since discriminatory intention is not a necessary element of employment practices proscribed by Title VII of the 1964 Civil Rights Act, 42 U.S.C. 2000e et seq., a defense of good faith is legally irrelevant; therefore, the lower court erroneously granted judgment as a matter of law to the Corporation. Moreover, since the court relied solely on the Corporation's good faith in dismissing the complaint against the Unions, the dismissal of the complaint was also error. We have considered these issues, and we reverse the order granting summary judgment to the Corporation while affirming the dismissal of the complaint against the Unions.
 
 
 2
 Following the passage of the 1964 Civil Rights Act, guaranteeing sex equality of occupational opportunity, the Corporation attempted to resolve that statute with the Illinois Female Employment Act, Ill.Rev.Stat. ch. 48, 5 et seq. (1971), which prevented the exploitation of women employed by industry by providing that they may not work more than 48 hours per week nor more than 9 hours on one day per week. In 1965, the Corporation began to eliminate sex discrimination in all jobs at its Kankakee, Illinois operations, except where required by the Illinois Female Employment Act. Thus, to avoid violating the state statutory maximum number of work hours per day for women, the Corporation continued to schedule only males for early start-up overtime, which consisted of reporting two hours early on Monday mornings to prepare for the remainder of the shift to begin work at the regular 7 a.m. starting time and remaining until the end of the shift at 3 p.m.
 
 
 3
 Although the Equal Employment Opportunity Commission ('EEOC') had ruled that good faith reliance on state female protective laws, such as the Illinois Female Employment Act, constituted a legitimate exception to Title VII, the Corporation, foreseeing the conflict between federal and state legislation, requested of the Illinois Department of Labor an exemption from the Illinois Female Employment Act, in order to permit women to work early start-up overtime in full compliance with Title VII. The request was denied on the basis that Illinois law was not pre-empted by Title VII.
 
 
 4
 Subsequently, the EEOC rescinded its earlier ruling and declared that it would take no position on the relation between Title VII and state legislation. The Corporation's Labor Relations Committee, comprised of company and union representatives, which had been eliminating sex distinctions in other employment categories, decided that women must be allowed to work early start-up overtime. To implement this decision and yet satisfy the maximum hours permitted by state law, the Committee concluded that women working early start-up overtime would complete work at 2 p.m., an hour prior to the scheduled termination of the shift.
 
 
 5
 Pursuant to the collective bargaining agreement between the Corporation and the Unions, Williams filed a grievance on June 7, 1968 protesting the 2 p.m. quitting time for women. This grievance was advanced to the fourth stage of the agreement's procedure; it was then deferred to permit the Corporation to seek permission again from the Illinois Department of Labor for women to work the full shift, a request which was later refused. On December 10, 1968, Williams filed a charge before the EEOC alleging that the loss of the tenth hour of wages by females working early start-up overtime was a discriminatory practice barred by Title VII, even if the Committee relied on state law.
 
 
 6
 The Corporation's legal dilemma was sharply defined when the EEOC announced that reliance on state protective legislation would no longer be considered a defense against a Title VII violation, while the Illinois Department of Labor stated that no exemption would be granted from the provision restricting the working hours of women. The Corporation determined to disregard state law and to afford women the opportunity to work the same number of early start-up overtime hours as male employees. The assignment of overtime opportunities was based on the collective bargaining agreement, which provided that such opportunities would be offered by shift or department daily to the qualified employee having the least number of overtime hours offered to him (as recorded on Corporation charts), whether or not such hours were actually worked. Further, an employee transferred to a new department or shift would be allotted the average number of overtime hours offered to all employees in that department or shift. To integrate women into the early start-up overtime program, the Labor Relations Committee decided that effective September 20, 1970, female employees would receive the average number of overtime hours offered to males in their department or shift, with seniority governing the ranking among females. After December 31, 1970, the ranking of both male and female employees would be determined by the actual number of hours of overtime opportunities offered to each employee.
 
 
 7
 After the EEOC notified Williams that conciliation efforts had failed, she and 24 female Corporation employees filed the class action in question on November 3, 1970. The plaintiffs requested declaratory and injunctive relief, the monetary equivalent of wages which woule have been earned had the Corporation permitted women to work early start-up overtime, plus attorneys' fees and costs.
 
 
 8
 The court below, in granting the Corporation's motion for summary judgment, concluded that because the Corporation relied on the Illinois Female Employment Act in denying overtime opportunities to female employees, the Corporation lacked the discriminatory intent required by 706(g) of the 1964 Civil Rights Act. 42 U.S.C. 2000e-5(g). That section however, is merely a limitation on forms of remedy; it is not an affirmative defense barring liability. Unlike the criterion specified there, 'intentionally engaging in an unlawful employment practice,' the standard of liability under Title VII is simply 'engaging in unlawful employment practices.' 42 U.S.C. 2000e-2. Thus, it is only necessary for Williams to establish that the Corporation engaged in employment practices proscribed by Title VII; the Corporation's intention is not pertinent. The Supreme Court has expressly rejected lack of discriminatory intent as a defense to Title VII liability, commenting, '. . . Congress directed the thrust of the Act to the consequences of employment practices, not simply the motivation . . ..' Griggs v. Duke Power Co., 401 U.S. 424, 432, 91 S.Ct. 849, 854, 28 L.Ed.2d 158 (1971). This interpretation is supported by both the statutory purpose and the scheme of the 1964 Civil Rights Act. It would have been incongruous for Congress to have intended a defense resulting in the perpetuation of discriminatory employment practices (even if based on state law) in a federal law designed to achieve equality of occupational opportunity. Id. at 429. Further, the scheme of Title VII provides that employers are exempted from liability under state laws which require the doing of acts which constitute unlawful employment practices, 42 U.S.C. 2000e-7, Jones Metal Products Co. v. Walker, 29 Ohio St.2d 173, 281 N.E.2d 1 (1972), not that reliance on state statutes resulting in discriminatory practices bars Title VII liability, as the Corporation asserts. Moreover, instead of a defense to liability, the Corporation's reliance on the Illinois Female Employment Act in the structuring of employment opportunities evidences liability, for that law required employers, 'to limit, segregate or classify employees so as to deprive such employees of employment opportunities because of sex' and 'to discriminate against individual employees with respect to compensation, terms, conditions and privileges of employment because of their sex' in contravention of Title VII. Caterpillar Tractor Co. v. Grabiec, 317 F.Supp. 1304, 1307 (S.D.Ill.1970). As the lower court expressly found it undisputed that the Corporation distributed overtime opportunities unequally between its male and female employees, Williams' motion for summary judgment should have been granted and that of the Corporation denied.
 
 
 9
 The court's dismissal of the complaint against the Unions was predicated on the same grounds which supported the granting of summary judgment to the Corporation. Reversal of this holding, however, is not necessarily warranted, as it is a well-established principle that a lower court's decision will not be reversed if correct, even though the court assigned an incorrect reason for the decision. Riley Investment Co. v. Commissioner of Internal Revenue, 311 U.S. 55, 59, 61 S.Ct. 95, 85 L.Ed. 36 (1940); Lusk v. Eastern Products Corp., 427 F.2d 705, 708 (4th Cir. 1970). Respecting the count of Williams' complaint alleging that the Unions' participation in the making of discriminatory overtime policy was a violation of Title VII, the Unions contend that dismissal was correctly ordered, since Williams failed to file a charge against the Unions before the EEOC. We note that the complaint does not allege that she ever filed a charge against the Unions; further, the record establishes that Williams' charge was in fact directed only against the Corporation. In Bowe v. Colgate-Palmolive Co., 416 F.2d 711 (7th Cir. 1968), this court plainly stated:
 
 
 10
 'It is a jurisdictional prerequisite to the filing of a suit under Title VII that a charge be filed with the EEOC against the party to be sued. 42 U.S.C. 2000e-5(e). This provision serves two important purposes. First, it notifies the charged party of the asserted violation. Secondly, it brings the charged party before the EEOC and permits effectuation of the Act's primary goal, the securing of voluntary compliance with the law.' Id. at 719.
 
 
 11
 That rule is equally applicable here, since even if the Unions were aware of Williams' charges, they were denied the opportunity to participate in conciliation proceedings aimed at voluntary compliance under EEOC auspices. Accord, Cox v. U.S. Gypsum Co., 284 F.Supp. 74, 76 (N.D.Ind.1968), aff'd., 409 F.2d 289 (7th Cir. 1969). Williams' reliance on Waters v. Wisconsin Steel Works, 427 F.2d 476 (7th Cir. 1970), cert. den., 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970) is misplaced. In holding that an aggrieved person who pleads a reasonable excuse for failing to file a timely charge before the EEOC is not barred from filing suit under the 1866 Civil Rights Act, 42 U.S.C. 1981, the court carefully distinguished Bowe:
 
 
 12
 'Previously in construing section 706(e) this court has held that: 'It is a jurisdictional prerequisite to the filing of a suit under Title VII that a charge be filed with the EEOC against the party sought to be sued, 42 U.S.C. 2000e-5(e) (citing Bowe, supra, and decisions of other courts).' Since these courts were not presented with arguments concerning the existence of a right to sue under section 1981, the cases cited were properly decided.' Id., 427 F.2d at 486.
 
 
 13
 As there is no allegation of a 1981 violation in the present case and as it is undisputed that the Unions were not charged before the EEOC, the court below correctly dismissed the count for lack of a jurisdictional basis.
 
 
 14
 Regarding Williams' allegation of a denial of fair representation, the Unions contend that the complaint was properly dismissed because it failed to assert that the Unions acted in bad faith. In pertinent part, the complaint stated that the Unions 'failed to protect the female members of the Company from said discriminatory policies and practices (the Corporation's overtime policy).' Mere failure by the Unions to protect female employees from discriminatory Corporation policies, however, is insufficient to establish liability. In Vaca v. Sipes, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967), the Supreme Court declared, 'A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory or in bad faith.' The Second Circuit has elaborated, 'Something akin to factual malice is necessary to establish a breach of duty of fair representation.' Jackson v. Trans World Airlines, Inc., 457 F.2d 202, 204 (2d Cir. 1972). Even if the complaint could be read to imply discriminatory denial of representation as well as discriminatory Corporation policies, the complaint would still be legally insufficient, for 'allegations of a complaint alleging a breach of a union's duty of fair representation must contain more than conclusory statement alleging improper representation,' Lusk v. Eastern Products Corp., supra, 427 F.2d at 708; supporting facts showing discriminatory conduct must be stated. Slagley v. Illinois Central Railroad Co., 397 F.2d 546, 552 (7th Cir. 1968). In the present case, neither the complaint nor the record evidences supporting facts showing union discrimination in representation. The Unions participated in apparent good faith with the Corporation through the Labor Relations Committee in developing a company policy on early start-up overtime which would offend neither federal nor state law. Moreover, when Williams filed her grievance, it was advanced to the fourth stage of the procedure provided in the collective bargaining agreement and deferred at that time only to permit the Corporation to renew its request to the Illinois Department of Labor for an exemption from the Illinois Female Employment Act in order to adopt lawfully the policy changes sought by Williams. As the complaint failed to allege conduct giving rise to statutory liability, the court below properly dismissed the remaining count in the complaint.[3]
 
 
 15
 With respect to the requested declaratory relief, we note that the Corporation terminated over three years ago the employment practice of which Williams complains, which was shortly after the Illinois Female Employment Act was declared invalid. It is true that the discontinuation of the claimed discriminatory practice does not necessarily foreclose the possibility of obtaining declaratory relief. Title VII was designed to provide that the final sanction would be judicial enforcement initiated by aggrieved individuals. 42 U.S.C. 2000e-5(e), Rosenfeld v. Southern Pacific Co., 444 F.2d 1219, 1222 (9th Cir. 1971). Thus, ostensibly private litigation is intended to effectuate congressional policies. Jenkins v. United Gas Corp., 400 F.2d 28, 32 (5th Cir. 1968). In this context, Williams' suit is something more than the assertion of a private claim of denial of a specific employment opportunity. It is also a claim involving the public interest that such denial resulted from discrimination forbidden by Title VII. Id. That issue is not dependent on proof that a particular discrimination has continued. Declaratory relief may still be appropriately granted, for whether 'in name or not, the suit is perforce a sort of class action for fellow employees similarly situated.' Id. at 33. Yet, before a declaratory judgment defining the rights and obligations of parties may issue, there must be some likelihood of the recurrence of the allegedly discriminatory policy. 6A J. Moore, Federal Practice, P57.13 (2d ed. 1948). In Rosenfeld, the court found that while Southern Pacific's closing of the site of the plaintiff's employment eliminated the particular issue,' the burden which Southern Pacific's general labor policy and the state statutes in question place on Southern Pacific's employment of women remains and controls the company's future work assignments.' Rosenfeld v. Southern Pacific Co., supra,444 F.2d at 1222. In Jenkins, the court found that the company's offer of job opportunities formerly denied to blacks was a 'resist-and-withdraw tactic,' commenting, 'Such actions in the face of litigation are equivocal in purpose, motive and permanence.' Jenkins v. United Gas Corp., supra, 400 F.2d at 33. In the present case, the state statute on which the Corporation formerly relied was invalidated, and nothing in the record indicates that any women employees have been burdened by a discriminatory labor policy during the past three years. Further, the alteration in Corporation policy preceded the suit in question and was apparently motivated by a desire to comply fully with the federal law, as interpreted by the EEOC in its 1969 ruling (holding that reliance on state law did not bar Title VII liability). On the basis of these facts, it would not be an abuse of discretion for the lower court on remand to deny declaratory relief.
 
 
 16
 As we have previously noted, the granting of injunctive relief and back pay is conditioned on a finding that the employer 'intentionally engaged' in an unlawful employment practice. 42 U.S.C. 2000e-5(g). This court, in Sprogis v. United Airlines, Inc., 444 F.2d 1194, 1201 (7th Cir. 1971), interpreted that phrase to mean that 'the employment practice must be deliberate rather than accidental,' rejecting wilfullness as a necessary element of the definition. Although Sprogis did not involve reliance on a state statute conflicting with Title VII, its logic has properly been extended to cover this factual situation. Schaeffer v. San Diego Yellow Cabs, Inc., 462 F.2d 1002 (9th Cir. 1972); Manning v. General Motors Corp., 466 F.2d 812 (6th Cir. 1972), cert. den., 410 U.S. 946, 93 S.Ct. 1366, 35 L.Ed.2d 613 (1973); LeBlanc v. Southern Bell Telephone and Telegraph Co., 460 F.2d 1228 (5th Cir. 1972), aff'g per curiam, 333 F.Supp. 602 (E.D.La.1971), cert. den. 409 U.S. 990, 93 S.Ct. 320, 34 L.Ed.2d 257 (1973); Kober v. Westinghouse Electric Corp., 480 F.2d 240 (3rd Cir. 1973). As the Ninth Circuit expressly noted, after finding that the company's policy of permitting men to work longer than women was deliberate and therefore an intentional violation of Title VII, 'The fact that the Company may have been relying on a state statute does not make their actions any less of a violation.' Schaeffer v. San Diego Yellow Cabs, Inc., supra, 462 F.2d at 1006. In the case at bar, it is clear that the Corporation followed a systematic and deliberate policy of permitting only male employees to receive opportunities to work early start-up overtime until September 21, 1970. The Corporation was, therefore, intentionally engaging in an employment practice proscribed by Title VII.
 
 
 17
 However, the conclusion that the Corporation was intentionally engaging in an unlawful employment practice does not necessarily warrant the awarding of injunctive relief and back pay. The statute is phrased in the subjunctive: 'The court may enjoin the respondent . . . and order such affirmative action as may be appropriate, which may inclue . . . back pay . . ..' 42 U.S.C. 2000e-5(g). In determining whether to grant relief, the lower court on remand must 'balance the various equities between the parties and decide upon a result which is consistent with the purposes of (Title VII) and the fundamental concepts of fairness.' Schaeffer v. San Diego Yellow Cabs, Inc., supra, 462 F.2d at 1006. In Bowe v. Colgate-Palmolive Co., supra, 416 F.2d at 720, this court declared, 'The clear purpose of Title VII is to bring an end to the proscribed discriminatory practices and to make whole, in a pecuniary fashion those who have suffered by it.' Where, however, the proscribed discriminatory practice has been terminated and there is little likelihood of recurrence, it would not be an abuse of discretion for a lower court to deny injunctive relief. In a similar context, the Sixth Circuit held: 'We find no fault with the District Court's refusal of an injunction which could have done no more than restrain the defendant . . . from doing that which it had not been doing for more than a year before the District Court order was entered.' Manning v. General Motors Corp., supra, 466 F.2d at 815. Injunctive relief would be even more inappropriate in the present case, since the Corporation had ceased its discriminatory policy mandated by the Illinois Female Employment Act over three years ago.
 
 
 18
 The strong congressional purpose of Title VII is to restore economically those who have suffered from proscribed discriminatory practices. Bowe v. Colgate-Palmolive Co., supra. Therefore, the plaintiff who is successful in proving an intentionally unlawful employment practice 'should ordinarily be awarded back pay, unless special circumstances would render such an award unjust,' Moody v. Albemarle Paper Co., 474 F.2d 134, 142 (4th Cir. 1973), since the 'back pay award is not punitive in nature, but equitable.' Robinson v. Lorillard Corp., 444 F.2d 791, 802 (4th Cir. 1971). The Fourth Circuit has expressly suggested that reliance on state statutes allegedly conflicting with Title VII would constitute a special circumstance justifying the denial of an award of back pay. Moody v. Albemarle Paper Co., supra, 474 F.2d at 142 n. 5. Rather than adopting a per se rule, however, we agree with the Ninth Circuit that 'in each case the merits of the plaintiff's claim and the public policy behind it must be balanced against the hardship on a good-faith employer.' Schaeffer v. San Diego Yellow Cabs, Inc., supra, 462 F.2d at 1007.
 
 
 19
 Williams filed her grievance on June 7, 1968, protesting the plan permitting females to work early start-up overtime and all but one hour of the regular shift. As the EEOC had announced on February 21, 1968 that state female protective legislation was an exception to the requirements of Title VII, the Corporation would have invited the criminal prosecution of its officers under the Illinois Female Employment Act had it granted Williams' request to work the full ten hours of the early start-up overtime shift. The Corporation was notified in August 1969 of the EEOC's reversal in policy, which then declared that reliance on state protective legislation would no longer be a defense to Title VII liability. While administrative interpretations by enforcing agencies are ordinarily entitled to great deference, e.g., Griggs v. Duke Power Co., supra, state statutes are entitled to the presumption of constitutionality until their invalidity is judicially declared. E.g., Davies Warehouse Co. v. Bowles, 321 U.S. 144, 153, 64 S.Ct. 474, 88 L.Ed. 635 (1944). The Corporation's reliance on the Illinois Female Employment Act was, therefore, reasonable until the judicial determination of September 9, 1970, declaring the state act unconstitutional, for 'prior to a judicial determination . . . an employer can hardly be faulted for following the explicit provisions of applicable state law.' Rosenfeld v. Southern Pacific Co., supra. Thus, during the 1968-1970 period defining the class, there was only one Monday on which the Corporation, knowing of the judicial declaration, deprived female employees of the opportunity to work early start-up overtime. This de minimus delay in the Corporation's implementation of its previously-announced plan for equal participation in overtime opportunities resulted from the inherent difficulties in altering the working procedures of a large industrial operation. Moreover, the Corporation, recognizing even before the EEOC the conflict between Title VII and state protective legislation, actively sought from the Illinois Department of Labor on four separate occasions during 1969-1970 an exemption from the Illinois Female Employment Act in order to comply fully with Title VII. The Department adamantly denied each request.
 
 
 20
 Williams attempts to adduce facts demonstrating that the Corporation did not rely in good faith on the Illinois Female Employment Act in denying early start-up overtime to female employees. These facts, however, are either immaterial (the Corporation's compliance with the terms of an exemption from the Illinois Six Day Week Act, Ill.Rev.Stat. ch. 48, sec. 8 (1971) granted by the Illinois Department of Labor) or groundless (the erroneous conclusions that the Corporation's overtime charts recorded overtime actually worked, rather than simply overtime opportunities, and that the full day of rest required by law must occur on the same day of each week). Under these circumstances, it would not be an abuse of discretion for the lower court on remand to deny an award of back pay.
 
 
 21
 Title VII provides that a court may in its discretion award the prevailing party reasonable attorneys' fees as part of costs. 42 U.S.C. 2000e-5(k). As the prevailing party in federal litigation is generally entitled to ordinary costs, rule 54(d), Fed.R.Civ.P., Congress apparently extended the rule to encourage the presentation to the court of controversies involving Title VII, since Congress intended 'the ultimate, final sanction to be judicial enforcement.' Jenkins v. United Gas Corp., supra, 400 F.2d at 32. This purpose would not be served if, as Williams urges, the scope of the term 'prevailing party' was extended beyond a courtroom context to include actual effect on corporate policy. Furthermore, the use in Title VII of language identical to that found in the Federal Rules of Civil Procedure clearly indicates a legislative intent to limit a discretionary award of fees to those parties who are successful in court. However, as a consequence of our holding reversing the grant of summary judgment to the Corporation and directing that summary judgment be entered for Williams, our strict construction of the term 'prevailing party' does not preclude Williams on remand from receiving her costs from the Corporation (though not from the Unions) nor from being eligible to receive a discretionary award of attorneys' fees.
 
 
 22
 As a general guideline, the amount of an award of attorneys' fees should be proportionate to the extent to which the plaintiff prevails in the suit. Schaeffer v. San Diego Yellow Cabs, Inc., supra, 462 F.2d at 1008. In this case, as we have noted, the circumstances indicate that the district court would be warranted in denying all the relief which Williams requested. It would follow that the denial of an award of attorneys' fees would not be an abuse of discretion. That result is particularly compelling, since Williams prosecuted her charge in the EEOC proceedings without the aid of counsel and since counsel did not file this suit until after the Illinois Female Employment Act, on which the Corporation had relied, had been declared invalid and after the Corporation had begun integrating women into its early start-up overtime program on equal terms with its male employees.
 
 
 23
 Respecting the order granting summary judgment to the Corporation, we reverse and remand the case for further proceedings suggested herein.
 
 
 24
 Reversed in part and remanded with instructions.
 
 
 
 *
 Associate Justice Tom C. Clark of the Supreme Court of the United States (Retired) is sitting by designation
 
 
 **
 Senior District Judge Robert A. Grant of the Northern District of Indiana, is sitting by designation
 
 
 [1]
 Williams' appeals, Nos. 73-1485 and 73-1075, are consolidated for purposes of this opinion
 
 
 [2]
 After proceedings pursuant to rule 23, Fed.R.Civ.P., the court below on November 29, 1971 approved a magistrate's order defining the proper class of plaintiffs as all 'present and former female employees of General Foods Corporation's Gaines and Corn Mill Plants in Kankakee employed from September 10, 1968 . . . until September 21, 1970.'
 
 
 [3]
 The Unions further contended that the complaint alleging denial of fair representation was properly dismissed because Williams failed to allege exhaustion of her remedies within the Unions and of her remedies under the collective bargaining agreement. As a result of our holding that the complaint was properly dismissed because of her failure to allege that the Unions acted discriminatorily or in bad faith, we need not reach those questions