BOARD OF EDUCATION OF COMMU-
NITY UNIT SCHOOL DISTRICT 303,
KANE AND DuPAGE COUNTIES, IL-
LINOIS, Plaintiff,

v.

CITY OF WEST CHICAGO, et al.,
Intervening Plaintiffs,

v.

Claude S. BRINEGAR, former
Secretary of Transportation,
et al., Defendants.

No. 72 C 3126.

United States District Court,
N.D. Illinois, E.D.

Dec. 8, 1988.

Chester Maciorowski, David P. List, Thomas McMahon, Sidley and Austin, Chicago, Ill., for plaintiff.

Harold J. Spelman, West Chicago, Ill., for City of West Chicago.

Alvin L. Catella, St. Charles, Ill., for City of St. Charles.

Charles E. Ruth for William V. Hopf, Wheaton, Ill., for DuPage County.

William J. Scott by Michael A. Benedetto, Jr., Chicago, Ill., for State of Ill., Daniel Walker, Illinois Dept. of Aeronautics and Guy Wood.

## MEMORANDUM OPINION
## AND ORDER

HOLDERMAN, District Judge:

The DuPage Airport Authority ("Airport Authority") has moved the court to enter an order releasing certain funds that have been held by the Registry of the United States District Court pursuant to an order entered by the late Judge Richard McLaren on January 11, 1974. For the reasons set forth below, the Airport Authority's motion will be granted.

## BACKGROUND FACTS

In 1971 DuPage County, as owner and operator of the then DuPage Airport, developed a plan to expand the airport by lengthening one runway and constructing another. In order to do so, the County purchased approximately 500 acres of land

south of the existing airport. DuPage County then applied to the Federal Aviation Administration ("FAA") for reimbursement of the funds expended in the land purchase. The FAA approved the reimbursement and issued a check to DuPage County in the amount of $870,786.00. *See* Final Draft Environmental Assessment, p. 1–9. The City of West Chicago, the City of St. Charles and the Board of Education of Community Unit School District 303, Kane and DuPage Counties, Illinois then sued to enjoin construction, alleging that the defendants in this case had violated the National Environmental Policy Act of 1969 (NEPA) and applicable FAA regulations by failing to prepare an environmental impact statement. In particular, the plaintiffs were concerned about the adverse effects the proposed airport development plan might have upon wetlands located on land targeted for airport use, noise levels in the area, and upon the construction of a junior high school complex.

On January 11, 1974, Judge McLaren issued an order which enjoined further action on the proposed airport construction until the defendants

> have caused a positive environmental impact statement to be prepared concerning the effect of future airport development by the County of DuPage and reimbursement therefor by the Federal Aviation Administration may have upon the environment, until a public hearing has been held upon said environmental impact statement, and until the Secretary of Transportation has made a final environmental decision thereon, all in accordance with the policies, procedures and regulations of the Department of Transportation and Federal Aviation Administration, which policies, procedures, and regulations are set forth on the chart entitled "environmental impact statements for airports," which chart is attached hereto and made a part of this order as

Exhibit 1, and in accordance with the requirements of the [NEPA]....

Order dated January 1, 1974, p. 3. Judge McLaren also retained jurisdiction to review the "final environmental decision" of the Secretary of Transportation upon the application of any party within 30 days of receipt of the decision. The FAA funds were deposited with the Registry of this court.

For the next several years, the issue of significant development on DuPage County airport appears to have been subordinated to the issue of which governmental body would control the airport. *See* Appendix B to Draft Environmental Assessment, pp. 27.22–27.35.[1]

Apparently in 1980, a new effort to enlarge and renovate the airport was initiated. *See* Appendix D of Draft Environmental Assessment, p. 38 ("Throughout the eight year development of the proposed plan...."). In April of 1983 a Citizens' Advisory Committee was formed to evaluate the Airport Authority's proposed airport layout. The Committee included opponents and proponents of the plan; individuals who resided within the Airport Authority's boundary; airport users; air traffic controllers; airport planners and engineers; and interested citizens. *See* Final Draft Environmental Assessment, p. 2–1. This Committee officially met nine times in order to discuss the Airport Authority's plan, to develop, investigate and discuss feasible alternatives to the proposed plan, and to recommend "a preferred development concept" for the DuPage Airport to the Airport Authority. *Id.*

The Committee made its recommendation to the Airport Authority in November of 1983. For the next several years the Airport Authority developed and revised the layout plan drawings, sought and obtained state and federal agency comments to the proposed plan and incorporated these comments into the plan. In August of 1986 a

1. The Fox Valley Airport Authority purchased the airport in 1978 (see Volume 2, Appendix B to Draft Environmental Assessment, p. 27.31) and spent the next several years obtaining financing. Then in 1987, the Illinois Legislature enacted P/A 84–1473 which transferred ownership of the airport to the DuPage Airport Authority. The constitutionality of PA 84–1473 and the legality of the DuPage Airport Authority are presently being litigated in the Circuit Court of Kane County, No. MR KA 87 089.

full set of airport layout plan drawings was prepared and submitted to the FAA and the Illinois Department of Aeronautics for final review and formal approval. The plan included 24 specific projects at the airport. *Id.* at 2–13 to 2–16.

In order to secure federal approval as well as funds, the Airport Authority prepared an environmental assessment report. The assessment was designed to evaluate the "social, economic and environmental implications" of the proposed development. A draft assessment was prepared by November 19, 1986 and public hearings were held a month later. A final draft assessment was prepared by February 4, 1988. The final draft assessment is 233 pages in length. Additionally, the final draft contains an appendix addressing each comment, question or concern raised at the December, 1986 public hearings; another appendix of the transcript of that hearing; an appendix of exhibits and an appendix of newspaper clippings regarding the long course of controversy over the proposed development.

The final draft assessment made a preliminary determination that no significant adverse environmental impact would result from the proposed development of the airport. *See, e.g.,* Final Draft Environmental Assessment, pp. 1–19, 4–1. The report noted, however, that such a determination was "ultimately an FAA finding/determination." *Id.* at 1–14.

On May 19, 1988 the manager of the FAA's District Office issued a memorandum stating, *inter alia,* that the proposed project "would not significantly affect the quality of the human environment...." One of the legal consequences of the FAA's determination is that the Airport Authority need not compile a full-fledged environmental impact statement ("EIS") as required by Section 102(2)(C) of NEPA.

## DISCUSSION

■ Shortly after the FAA's determination of no significant adverse impact, the Airport Authority moved this court for release of the funds impounded by Judge McLaren in 1974. The Airport Authority argues that the terms of Judge McLaren's order have been fulfilled since an environmental assessment has been completed, public hearings have been held, the FAA has made a final determination of no significant impact, and thirty days have elapsed since the issuance of the FAA determination without anyone seeking review of the decision in this court.

St. Charles, the only plaintiff to object to the Airport Authority's motion for release of the funds, has raised several arguments.

The most substantive of St. Charles' arguments is that Judge McLaren's order required a "full dress" EIS, and that without such a document, the funds cannot be released. Mem. in Opposition, pp. 5–6.

■ The court has concluded that even if fourteen years ago Judge McLaren intended that a full environmental impact study be completed, the history of the proposed airport development and the effort expended by the Airport Authority in preparing the environmental assessment require a determination that the Airport Authority has substantially complied with the terms of Judge McLaren's order. Both the scope of the development project and the law regarding the necessity of elaborate EISs under § 102(2)(C) have changed significantly since Judge McLaren's 1974 order. A federal agency's determination not to prepare an EIS will be set aside only if it is an abuse of discretion. *See, e.g., River Road Alliance, Inc. v. Corps of Engineers of U.S. Army,* 764 F.2d 445, 449 (7th Cir.1985) *cert. denied* 475 U.S. 1055, 106 S.Ct. 1283, 89 L.Ed.2d 590 (1986). Environmental assessments today "are thorough enough to permit a higher threshold for requiring environmental impact statements." *Id.* at 451. In this case, St. Charles has failed to raise a single issue not addressed by the final draft environmental assessment: indeed, given the exhaustiveness of the report, St. Charles would be hard-pressed to do so. A public hearing was held to address any concern of the persons affected by the proposed plan: the final draft of the assessment includes responses to each of

those concerns.[2]

St. Charles also argues:

There is no issue before the court relating to possible disbursement of current federal funds for airport development or the DuPage Airport. Assuming, *arguendo*, that the "no significant impact" finding is legally sufficient relative to current federal funds, it is not sufficient under the express terms of the JUDGMENT to authorize release of the impounded funds. The JUDGMENT requires a "positive environmental impact statement" which can only result from the full dress procedure specified in Section 4332(C).

Mem. in Opposition, pp. 5–6.

St. Charles appears to be arguing here that, although the original plans for the DuPage County Airport have been subsumed into a more comprehensive development plan, and although a thorough assessment of the environmental impact of the proposed plan has been completed, the Airport Authority must complete a detailed EIS on the *original* plan before the funds can be released. The court has concluded that such a result would be both absurd and a waste of valuable resources.

St. Charles next objects to release of the funds on the ground that the FAA's District Office Manager and not the Secretary of Transportation made the determination of no significant adverse impact. Moreover, the City argues, the court cannot properly review the determination without "a record of the administrative proceeding" justifying the determination. *See* Mem. in Opposition, pp. 6–7.

The court disagrees. Reasonably interpreted, neither Judge McLaren's Order nor NEPA requires the Secretary of Transportation to personally review and approve every EIS or environmental assessment. *See Life of the Land v. Brinegar,* 485 F.2d 460, 466–67, n. 8 (9th Cir.1973), *cert. denied,* 416 U.S. 961, 94 S.Ct. 1979, 40 L.Ed. 2d 312 (1974). Furthermore, the court believes that the environmental assessment

itself records the administrative process justifying the FAA decision.

Finally, St. Charles claims that the court should forestall releasing the funds until the issue of the constitutionality of P/A 84–1473 and the legality of the Airport Authority are determined by the Illinois Circuit Court. The court declines to do so. State statutes, including P/A 84–1473, are "entitled to the presumption of constitutionality until their invalidity is judicially declared." *Williams v. General Foods Corp.,* 492 F.2d 399, 408 (7th Cir.1974).

In sum this court concludes, as the Fourth Circuit did in a similar context, that "there must be an end to the process somewhere." *Providence Road Community Ass'n v. Environmental Protection Agency,* 683 F.2d 80, 83 (4th Cir.1982). These funds have been in the Registry of the District Court for almost 15 years; the Airport Authority has compiled a thorough review of the environmental consequences of the proposed project; a public hearing was held; and no party objected to the FAA's final determination of no significant impact within 30 days of its issuance.

## CONCLUSION

For the reasons set forth herein and pursuant to 28 U.S.C. § 2042, it is ORDERED that the Clerk of the United States District Court for the Northern District of Illinois is authorized and directed by no later than January 11, 1989 to release to the DuPage Airport Authority certain funds, together with accumulated interest thereon, deposited by the Department of Transportation and the Federal Aviation Administration on behalf of the Illinois Department of Aeronautics pursuant to an order entered in this cause on January 11, 1974.

---

**2.** If an agency holds a public hearing before preparing an environmental assessment, a subsequent decision by that agency of no significant impact is entitled to greater deference by the court. *River Road Alliance,* 764 F.2d 445, 451 (7th Cir.1985).