**UNITED STATES of America, Plaintiff,**

v.

**The BOARD OF TRUSTEES OF ILLINOIS STATE UNIVERSITY, Defendant.**

**No. 95–3067.**

United States District Court, C.D. Illinois, Springfield Division.

Nov. 1, 1996.

James A. Lewis, Springfield, IL, Elizabeth I. Hack, Luis A. Lavin, Washington, DC, for plaintiff.

Carol J. Posegate, Springfield, IL, for defendant.

## *OPINION*

RICHARD MILLS, District Judge:

The affirmative action program here violated Title VII because its sole purpose was to circumvent a lawful veterans' preference program.

Summary judgment is granted in favor of the plaintiff and Illinois State University is hereby enjoined from engaging in such practice in the future.

### I. BACKGROUND

Plaintiff brought this action against the Board of Trustees of Illinois State University to enforce the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.[1]

---

1. The action was originally brought against the Board of Regents of Regency Universities of the State of Illinois, an entity which no longer exists.

On June 6, 1996, the Court allowed Plaintiff to substitute the Board of Trustees for the Board of Regents.

Illinois State University (ISU) is a public educational institution located in Normal, Illinois. Employment at ISU is regulated by the Illinois State Universities Civil Service System (SUCSS), a separate entity.[2] Applicants for employment must pass a civil service examination and their job opportunities are largely determined by their scores on the test. After applicants take the civil service exam, they are ranked by their scores and their names are placed on a hiring register. When ISU needs to hire someone to fill a civil service job, it calls upon the three highest ranked individuals on the hiring register and interviews them for the position.[3]

Under the SUCSS, veterans benefit from a preference[4]. Under the veterans' preference program, individuals who have served in the armed forces have points added to their test scores. Thus, an individual who has served in the armed forces is placed higher on the hiring register than a person with a comparable test score who has not served in the military. The civil service test for some classifications is easy, so many test takers receive perfect scores. After points are added under the veterans' preference program, therefore, many individuals on the hiring register for some jobs have higher-than-perfect scores.[5]

ISU employs about 210 Building Service Workers. Building Service Worker (BSW) is a union, civil service position. BSWs perform janitorial work such as cleaning floors and restrooms. ISU established the BSW classification in 1975, after abolishing the separate classifications of Janitor and Jani-

tress. The position has no minimum educational requirement. To apply, a person must take the civil service examination and complete an application. Applicants are placed on a hiring register based on their test scores. The three highest scoring applicants are interviewed by the University's facilities management department if an opening occurs.

Under certain circumstances, the SUCSS allows a university to adopt a "learner" program to diversify its work force. A learner program is a short-term apprenticeship program designed to prepare a person for full fledged employment in a particular classification. Learner programs may only be implemented if experience shows that the test used to rank applicants for a classification does not produce a representative cross-section of candidates.

In 1982, ISU instituted a BSW Learner Program. The purpose of this program was to train individuals to become BSWs. The BSW Learner Program is exempt from the civil service examination process, but BSW learners are civil service employees. ISU employs only about 20 BSW Learners at any one time.

ISU adopted the BSW Learner Program to increase the number of minorities and women employed as BSWs.[6] As a result of the veterans' preference system used in Illinois, most of the high ranked candidates for BSW positions were veterans and, in central Illinois, most veterans are white men. ISU also was concerned that the number of wom-

2. The SUCSS was created and is governed by the State Universities Civil Service Act, 110 ILCS 70/0.01 to 70/46 (West 1993 & Supp.1996).

3. ISU must request the names of the three highest ranked individuals on the register from the Director of the SUCSS Merit Board. 110 ILCS 70/36h.

4. The amount of the preference has varied over time. Before September 19, 1991, Ill.Rev.Stat. 1991, ch. 24½, para. 38b6 provided a five point enhancement to the test score of any "person who was engaged in the military, air or naval service of the United States during a period of hostilities with a foreign country...." The preference now varies depending on the service record of the individual. 110 ILCS 70/36g.

5. Robert S. Foldesi, one of ISU's designated witnesses, see Fed.R.Civ.P. 30(b)(6), testified as follows:

> Just note, also, as others may have, that the civil service test for this classification is not significantly demanding, so that many people achieve a score of a hundred. Therefore, those with veterans preference points of three, five or [ten] are the ones who are left on the register who are referred for employment.

Foldesi Dep. at 57.

6. ISU asserts that it did not specifically design the BSW learner program to increase the number of women and minority BSWs. That assertion is unsupported and is contradicted by the deposition testimony of ISU's designated witnesses.

en BSWs had dropped following the consolidation of the Janitor and Janitress classifications. Additionally, the University was approached by minority groups interested in opening the campus to a more diverse work force.

■ In 1980, Blacks and Hispanics accounted for 4.3% of the civilian labor force in the Bloomington–Normal Standard Metropolitan Statistical Area (SMSA) and women accounted for 45.3% of the civilian labor force.[7] In 1982 the BSW work force was 33% female and 8% black or hispanic. In 1987, the BSW work force was 13% black or hispanic. In 1990, 4.8% of the civilian labor force in the Bloomington–Normal SMSA were black or hispanic. From 1982 to 1991, none of the 127 BSW Learners hired by ISU was a white male.

From 1982 until January 1991, ISU did not accept applications for the BSW Learner Program from white men. ISU briefly abandoned the BSW Learner program in 1991, after a white male applicant filed a charge of discrimination with the Equal Employment Opportunity Commission. The current BSW Learner program, which the University reinstituted in 1992, does not exclude white males. This case, therefore, considers the validity of the BSW Learner program from 1982 to 1991.

## II. SUMMARY JUDGMENT

Under Fed.R.Civ.P. 56(c), summary judgment "should be granted if the pleadings and supporting documents show that 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Ruiz–Rivera v. Moyer*, 70 F.3d 498, 500–01 (7th Cir.1995). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Courts must consider evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

## III. ANALYSIS

This action is brought pursuant to 42 U.S.C. 2000e–6 (1994). The United States alleges that ISU engaged in a pattern or practice of discrimination by refusing to hire white males in its BSW Learner program between 1982 and 1991.

### A. *Plaintiff's Case*

■ A challenge to a plan such as the BSW Learner Program may be considered under the analytical framework of *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

> Once a plaintiff establishes a prima facie case that race or sex has been taken into account in an employer's employment decision, the burden shifts to the employer to articulate a nondiscriminatory rationale for its decision. The existence of an affirmative action plan provides such a rationale. If such a plan is articulated as the basis for the employer's decision, the burden shifts to the plaintiff to prove that the employer's justification is pretextual and the plan is invalid. As a practical matter, of course, an employer will generally seek to avoid a charge of pretext by presenting evidence in support of its plan. That does not mean, however, ... that reliance on an affirmative action plan is to be treated as an affirmative defense requiring the employer to carry the burden of proving the validity of the plan. The burden of proving its invalidity remains on the plaintiff.

*Johnson v. Transportation Agency, Santa Clara County*, 480 U.S. 616, 626–27, 107 S.Ct. 1442, 1449, 94 L.Ed.2d 615 (1987).

■ Plaintiff has met its prima facie burden. From 1982 to 1991, the BSW Learner Program excluded applicants solely because they were white men. Despite the fact that

---

7. In a case which involves an unskilled job with no minimum educational requirement, comparisons may be made to the general labor pool. *See* *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 337 & n. 17, 97 S.Ct. 1843, 1855 & n. 17, 52 L.Ed.2d 396 (1977).

nearly half of the local labor pool were white men, ISU never once hired a white man as a BSW Learner between 1982 and 1991. ISU certainly engaged in a pattern or practice of discrimination on the basis of race and sex. *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 336, 97 S.Ct. 1843, 1855, 52 L.Ed.2d 396 (1977) (stating that the United States must prove that "racial discrimination was the company's standard operating procedure— the regular rather than the unusual practice."). ISU contends that it did not have an express policy of excluding white men from the program but the record demonstrates that exclusion was the university's policy, express or otherwise. For example, one of ISU's designated witnesses, Colette S. Homan, testified that from 1982 until ISU suspended the program, if a white male applied for a position as a BSW Learner, the university staff would "suggest" to them that the BSW Learner program was for women and minorities and that if they desired employment they had to take the civil service exam.

■ ISU discriminated against white male job applicants through its BSW Learner Program. The BSW Learner Program is a voluntary affirmative action program.[8] Therefore, the burden shifts back to Plaintiff to prove the program invalid. To determine whether an affirmative action plan is valid, the Court must look to the factors set forth in *United Steelworkers of America v. Weber,* 443 U.S. 193, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979).

"According to *Weber,* an employer's voluntary affirmative action plan is not a violation of Title VII if (1) its purpose is similar to that of Title VII, namely to 'break down old patterns' of discrimination; (2) the plan does not 'unnecessarily trammel' the rights of those outside the group that it is designed to protect; and (3) it is designed to eliminate a manifest racial or sexual imbalance."

*Smith v. Virginia Commonwealth University,* 84 F.3d 672, 676 (4th Cir.1996).

■ First, the Court must identify the purpose of the BSW Learner Program and determine whether it is similar to that of Title VII. Plaintiff asserts that ISU adopted the program solely to defeat the effect of the veterans' preference program. The evidence to support this claim is overwhelming.[9] One witness, Janet Bremner, whom ISU designated to testify about the time period from 1983 to 1986, testified that the effect of the veterans' preference system on the number of women and minorities in BSW positions was one of ISU's central concerns when it adopted the BSW Learner Program.[10] Another witness, Dr. Gloria–Jeanne Davis, the University's affirmative action officer since 1985, explained her understanding of the program as follows:

That because the role of—because of the rule of three, like I mentioned before, the people who are on that track, they've taken the test, they've scored, because that track is made up of predominantly one group of people, which happens to be white males, and because the University is interested in diversifying all segments, that that program was instituted to try and diversify that—the particular jobs that that falls under, building service worker jobs. It was explained at one point that if—I think

**8.** ISU objects to this conclusion, but the Court finds that it is the only sensible way to characterize the BSW Learner Program.

**9.** In response to Plaintiff's claim in its Statement of Undisputed Facts that the BSW Learner Program was adopted solely to circumvent the veterans' preference program, ISU stated: "[T]he learner program at ISU was instituted in 1982 as an alternative approach to employment as a building service worker at ISU. The learner program at ISU as originally implemented in 1982 was designed to broaden the hiring pool for building service workers." Defendant never cites any hard evidence for these propositions,

but only refers to its responses to interrogatories. Even taken at face value, ISU's response simply avoids the ultimate question: why did ISU adopt the BSW Learner Program?

**10.** Ms. Bremner testified as follows:

Q. ... My understanding based on what other individuals have said is that one of the concerns the University had was that the building service worker positions were being filled by white males partly because of the veterans preference that they were given. Is that your understanding?

A. That's my understanding, yes.

the analogy was used if we hire for the next hundred years everybody on the list as it stood, we would not get an underrepresented group in any one of those jobs. Because of the testing, because of the veteran points, it just wouldn't happen. So it was an effort to try and diversify part of the University.

Davis Dep. at 24–25. Robert Foldesi, the University's current director of human resources, testified that:

The fact of the matter continues to be that our register system is blocked by primarily white male veterans. The State of Illinois and the civil service system grants credit, up to 10 points, for being a veteran, and in this particular geographical region, records will show that over a consistent and extended period of time—in a consistent fashion and over an extended period of time, there have been white males with a score of over a hundred blocking the register.

Foldesi Dep. at 57. The University also responded to one of Plaintiff's interrogatories by stating: "At the time that the Learner Program was implemented, females and minorities were underrepresented as building service workers. Defendant believed that the under-representation of females and minorities was due at least in part to the state university's civil service system which gave preference to veterans. The vast majority of applicant veterans in Central Illinois are male caucasians." This evidence amply demonstrates that ISU adopted the BSW Learner Program to counteract the effect of the veterans' preference program.[11]

The next question, still part of the inquiry into the first *Weber* factor, is whether counteracting the effect of a veterans' preference program is consistent with the purpose of

Title VII. It is not. Congress designed Title VII to rid the workplace of discrimination based on race and gender. In *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979), the Supreme Court upheld a state veterans' preference program against an equal protection challenge. In doing so, the Court held that a veterans' preference discriminates only on the basis of veteran status (a gender and race neutral characteristic) and thus does not constitute gender discrimination. *Id.* at 281, 99 S.Ct. at 2297.

In this case, it may be true that the Illinois veterans' preference caused more white men to be hired as BSWs. But that effect of the veterans' preference program was not discrimination. *See Feeney*, 442 U.S. at 281, 99 S.Ct. at 2297. Therefore, implementing an affirmative action program to counteract that effect of the veterans' preference program is inconsistent with the purposes of Title VII. *See Quirin v. City of Pittsburgh*, 801 F.Supp. 1486, 1491 (W.D.Pa.1992) (concluding that no empirical basis existed for an affirmative action plan where the central reason why more men than women were hired was that more men took advantage of the veteran's preference).[12]

The University suggests that it designed the BSW Learner Program to mend an imbalance in the BSW work force—that it was not employing sufficient numbers of women and minorities as BSWs. With respect to minorities, that is simply untrue. In 1982, when ISU adopted the BSW Learner Program, Blacks and Hispanics made up 8% of the BSW work force. According to 1980 census data, Blacks and Hispanics accounted for only 4.3% of the civilian labor force in the Bloomington–Normal area. ISU was in fact over-employing Blacks and Hispanics in the

---

**11.** This conclusion is strongly supported by another deposition, that of Colette Homan, who was designated by ISU to testify about the BSW position throughout the period in question. Ms. Homan testified that "for the last 13 years" the hiring register for BSWs has been dominated by veterans with civil service scores above 100.

**12.** In addition to citing *Feeney* for the proposition that the effects of veterans preference programs are not discrimination that may be remedied by affirmative action, Plaintiff cites Section

712 of Title VII, 42 U.S.C. § 2000e–11 (1994). Section 712 provides "Nothing contained in this subchapter shall be construed to repeal or modify any Federal, State, territorial, or local law creating special rights or preference for veterans." Section 712 evinces Congress' intent not to disturb the effects of veterans preference programs in the course of outlawing employment discrimination. Any outcome in a Title VII case that undermines veterans preference programs is presumably disfavored.

BSW classification. The statistics show that ISU employed only 61 women BSWs in 1982, 33% of its BSW work force and that in 1980, women made up 45.3% of the civilian labor force. This disparity might support an affirmative action plan, but only for women. Furthermore, the University's witnesses testified that the decrease in the number of female BSWs was due not to discrimination but to the elimination of the antiquated, separate classifications of Janitor and Janitress.

ISU fails to come forward with any evidence to show that it in any way discriminated against women in hiring before it adopted the BSW Learner Program.[13] In fact, several witnesses testified that they were not aware of any discrimination that occurred at the University. Furthermore, ISU conducted no studies to support its program, and it appears that no one ever questioned the validity of the civil service exam. This all leads inevitably to the conclusion that ISU adopted the BSW Learner Program solely to circumvent the effect of a lawful veterans' preference program.

ISU did not implement the BSW Learner Program to eliminate a manifest racial imbalance, because none existed at the time the program was adopted. Thus, with respect to race, the program fails the third element of the *Weber* test. An imbalance existed in the number of women serving as BSWs, but ISU did not adopt the BSW Learner Program to eliminate that imbalance. Instead, as discussed above, ISU adopted the program to circumvent a lawful veterans' preference program. So, with respect to sex the program also fails the third element of the *Weber* test.

Even if ISU could produce some support or a valid reason for adopting its BSW Learner Program, and even if the program had been designed to eliminate a manifest racial or sexual imbalance, the program fails the second prong of the *Weber* test. 443 U.S. at 208, 99 S.Ct. at 2730 (a plan may not "unnecessarily trammel the interests of white employees"). A hiring program that has indefinite duration and that is completely closed to white male applicants unnecessarily trammels the rights of third parties. In *Weber,* the program approved by the Supreme Court was open to members of nonminority groups and was limited in duration. 443 U.S. at 208, 99 S.Ct. at 2730 (noting that the plan in question did not "create an absolute bar to the advancement of white employees" and was "a temporary measure; it is not intended to maintain racial balance, but simply to eliminate a manifest racial imbalance"). The BSW Learner Program has neither of those favorable characteristics.

### B. *ISU's Defense*

■ ISU defends against Plaintiff's Motion for Partial Summary Judgment with a peculiar line of reasoning. ISU argues that the BSW Learner Program is not a voluntary affirmative action program but is instead a "valid state authorized and implemented program." ISU says that it simply took advantage of a device allowed by state law to counteract the allegedly discriminatory entry tests for the BSW classification. ISU misstates the role of the law authorizing learner programs. The provisions of the SUCSS rules that permit ISU to adopt learner programs do not necessarily make the BSW Learner Program permissible under federal law. Instead, their function is simply to authorize state universities to establish such programs and to monitor their progress. The BSW Learner Program is undeniably a voluntary affirmative action program adopted pursuant to state law and must be considered under the foregoing analysis.[14]

---

**13.** In its Motion for Partial Summary Judgment and accompanying Statement of Undisputed Facts, Plaintiff points to places in the record that support its claim that ISU had no evidence of discrimination before implementing the BSW Learner Program. In response, ISU has produced nothing, no deposition testimony about discrimination, no records of complaints, no studies. Thus, ISU fails to meet its burden of demonstrating a contested issue of material fact relating to its reasons for adopting the BSW Learner Program.

**14.** This conclusion is stated in Plaintiff's Statement of Undisputed Facts. ISU contests the statement, stating that "the learner program at ISU was instituted in 1982 as an alternative approach to employment as a building service worker at ISU. The Defendant requested approval for the program from the State Universities Civil Service Commission and the Commission approved the program before it was implemented." The only evidence in support of this assertion is ISU's response to an inter-

ISU cites no authority for the proposition that the mere existence of a state-law mechanism for establishing affirmative action plans guarantees that those plans will be found valid when challenged under Title VII. As the United States Court of Appeals for the Seventh Circuit noted in *Quinones v. City of Evanston,* 58 F.3d 275, 280 (7th Cir.1995), state law is little help if it conflicts with a state employer's obligations under federal law. Only if action pursuant to state law is permissible under an applicable federal law may an employer look to state law to govern its conduct. The question in this case is not whether Illinois law permits ISU to adopt learner programs, the question is whether ISU was permitted, under Title VII, to adopt the BSW Learner Program.

■ ISU cites *Williams v. General Foods Corp.,* 492 F.2d 399 (7th Cir.1974), in apparent support of its position. But *Williams* does not support any of ISU's claims. *Williams* involved a Title VII suit against a private employer. The employer had persisted in following an Illinois female protective law after Title VII became law. The employer persisted in discriminating against women under the state law because state authorities insisted that it was still valid even after the passage of Title VII. The Seventh Circuit stated: "[T]he scheme of Title VII provides that employers are exempted from liability under state laws which result in the doing of acts which constitute unlawful employment practices, not that reliance on state statutes resulting in discriminatory practices bars title VII liability...." 492 F.2d at 404. The Seventh Circuit also held that good faith reliance on a discriminatory state statute might provide a defense to an award of back pay. *Id.* at 408. But this phase of this case is concerned only with liability, not damages, so the latter portion of the *Williams* opinion is irrelevant.

ISU also contends that the BSW Learner Program is permitted because the Illinois statute and regulations that allowed ISU to establish such programs have not previously been declared invalid. As ISU points out, state law only allows it to establish a learner program when "the examining instrument has not produced a representative cross-section of candidates from all ethnic, sex, racial, and cultural backgrounds" or when "experience has shown that the examining instrument for an entry-level class has not produced a representative cross-section of candidates." ISU claims that because Illinois law only allows it to establish a learner program for permissible reasons (such as when an entry test is discriminatory), then the BSW Learner Program must have been adopted for a permissible reason.

The second element of ISU's defense is also illusory. ISU seems to argue that because it adopted the BSW Learner Program pursuant to the SUCSS and the SUCSS only allows a learner program if the employer has established that the examining instrument is discriminatory then the BSW Learner Program must have been adopted because the examining instrument (the civil service exam given to all BSW applicants) is discriminatory. That argument confuses authority with proof. The SUCSS allows ISU to establish learner programs if examining instruments are discriminatory. But simply because SUCSS allows learner programs that might be permissible under Title VII does not mean that all programs adopted pursuant to that authority are permitted under Title VII. Furthermore, ISU has not identified one shred of evidence, apparently because none exists, to demonstrate that the civil service test resulted in a pool of employees that did not constitute a fair cross-section of the population. Instead, the only evidence is that the veterans' preference program created a pool of potential employees dominated by white men. As previously discussed, that is not a valid reason for implementing an affirmative action program.

### C. *General Injunctive Relief*

ISU also challenges the propriety of the general injunctive relief Plaintiff seeks.

---

rogatory which states substantially the same thing.

Plaintiff's position that the BSW Learner program is a voluntary affirmative action plan is supported by deposition testimony of Dr. Gloria–

Jeanne Davis, ISU's affirmative action officer. She testified that she understood the BSW Learner program to be an affirmative action program.

Plaintiff seeks an injunction against ISU engaging in any act or practice with respect to the BSW Learner Program that has the purpose of discriminating against any individual on the basis of race, national origin, or sex.

■ "District judges have wide discretion to issue injunctions in Title VII cases in order to fashion complete remedies and to make whole the victims of employment discrimination." *Dombeck v. Milwaukee Valve Co.*, 40 F.3d 230, 238 (7th Cir.1994) (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975)); *accord EEOC v. Gurnee Inn Corp.*, 914 F.2d 815, 817 (7th Cir.1990). At least one court has concluded that once a court finds liability under Title VII, it must issue an injunction. *United States v. Gregory*, 871 F.2d 1239, 1246 (4th Cir.1989) ("[W]hen a plaintiff has prevailed and established the defendant's liability under Title VII, there is no discretion to deny injunctive relief completely."). The Seventh Circuit recently noted that in cases where applicants for employment have been victims of unlawful discrimination, "the proper injunctive remedy ... is to restore the chance [to gain employment] by enjoining the discriminatory practice." *Wittmer v. Peters*, 87 F.3d 916, 918 (7th Cir.1996).

■ In this case, ISU violated Title VII by adopting an affirmative action program to circumvent a lawful veterans' preference program. The affirmative action program adopted unnecessarily trammeled the rights of white male applicants for employment by completely denying them the opportunity to compete for some jobs at ISU. ISU argues that the Court should not enjoin such discriminatory practices because ISU has abandoned them. The Court notes, however, that ISU abandoned the BSW Learner Program only after this proceeding was initiated. Thus, ISU's decision may not have been purely voluntary. The Court will grant the requested injunction to ensure that all individuals who have been denied the chance to compete for BSW positions may do so on equal footing in the future.

## IV. CONCLUSION

The Court finds that the BSW Learner Program, as it existed at ISU from 1982 to 1991, violated Title VII. Summary Judgment will be granted in favor of Plaintiff on the issue of liability.

The Court previously bifurcated this case to allow discovery and trial of the issue of liability and a separate discovery phase and trial related to individual relief. The Court will allow the parties time to discuss settlement of any individual claims for relief, after which the case will be set for a scheduling conference to set the course for the second phase of the case.

*Ergo,* Plaintiff's Motion for Partial Summary Judgment is ALLOWED. The Court finds that Defendant violated Title VII of the Civil Rights Act of 1964 through the Building Service Worker Learner Program at Illinois State University. Defendant engaged in a pattern or practice of unlawful employment practices by refusing to hire white males into the position of Building Service Worker Learner between 1982 and 1991. 42 U.S.C. §§ 2000e–2(a)(1), 2000e–6(a).

Defendant is hereby enjoined from engaging in any act or practice with respect to the Building Service Worker Learner Program at Illinois State University that has the purpose or effect of discriminating against any individual on the basis of race, national origin, or sex.